UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION
Case Number: 18-10130-CIV-MARTINEZ-OTAZO-REYES

PLATINUM CONTRACTING, LLC,
    Plaintiff,

vs.

F/V CHASING TAIL; a 2000, 48 ft.
Ocean Super Sport, her engines, tackle, apparel
And furnishings, *In Rem*; and
PAUL BEN GIEFER, an Individual, and
SALTY CREWS SPORT FISHING LLC,
a Florida limited liability company,
    Defendants.
_____/

## **OMNIBUS ORDER**

**THIS CAUSE** is before the Court upon the following: (1) Defendant, Paul Ben Giefer's Motion to Dismiss Plaintiff, Platinum Contracting, LLC's Complaint [ECF No. 16]; (2) Defendant, Paul Ben Giefer's Motion for Court to Abstain from Exercising Jurisdiction over this Case [ECF No. 17]; (3) Defendants' Emergency Motion to Quash Arrest Warrant [ECF No. 32]; and (4) Defendants' Motion for Temporary Restraining Order [ECF No. 33]. The Court has considered the record in this action, the motions and responses thereto, and is otherwise fully advised in the premises.

### I.    Background

In August 2018, Plaintiff filed its Verified Complaint *In Rem* and *In Personam* against Defendants F/V Chasing Tail, Paul Ben Giefer, and Salty Crews Sport Fishing, LLC ("Salty Crews"), alleging that Plaintiff is the lawful owner of F/V Chasing Tail [ECF No. 1]. In its Verified Complaint, Plaintiff alleges that Marty Crews and his son, Mitchell Crews, are the owners of Plaintiff, Platinum Contracting, LLC. *Id.* at 1. Plaintiff further alleges that it hired Defendant Giefer in early 2016 and that Defendant Giefer assisted with the purchase of a vessel

that would be used to "entertain Platinum customers." *Id.* According to Plaintiff, on its behalf, Defendant Giefer "applied for a boat loan from Iberia Bank," providing "his own personal financial information a proposed individual guarantor." *Id.* at 2. Moreover, in order to secure the loan, Defendant Giefer would have to show that he was an "owner" of Plaintiff. *Id.* ¶ 11. As a result, Plaintiff alleges that in July 2016, Defendant Giefer "created a new Operating Agreement," which reflected that he was a fifty percent owner of Plaintiff (*id.* ¶ 12), "back dated" the agreement to the date that Plaintiff was formed, July 26, 2013 (*id.* ¶ 14), and included language that stated Defendant Giefer was a member of Plaintiff that "had sole authority to act on behalf of Plaintiff in obtaining the loan, and in purchasing the boat" (*id.* ¶ 15). According to Plaintiff, in addition to submitting these "forged documents" to Iberia Bank, which included Defendant Giefer and Crews' signature (*id.* ¶ 15), Plaintiff alleges that Defendant Giefer also submitted a "second bogus operating Agreement," which "listed himself as owning ninety percent" of Plaintiff. *Id.* ¶¶ 21-24. Once Defendant Giefer secured the loan from Iberia Bank, Plaintiff alleges that Defendant Giefer, without Plaintiff or Crews' knowledge, "changed the name of the purchaser on the Purchase Agreement from 'Platinum' to 'Salty Crews Sports Fishing, LLC.'" *Id.* ¶ 28. Plaintiff seeks damages against Defendants for their alleged wrongful conduct, namely, Defendant Giefer's alleged fraudulent misrepresentations and taking of the F/V Chasing Tail. *See id. generally.*

Defendants now request the Court to: (1) dismiss the action [ECF No. 16], (2) abstain from exercising jurisdiction [ECF No. 17]; (3) quash its Warrant *In Rem* for the F/V Chasing Tail [ECF No. 32]; and (4) enter a temporary restraining order that "refrains" the court-appointed custodian from preventing a third party from re-possessing the F/V Chasing Tail [ECF No. 33].

In his Motion for Court to Abstain from Exercising Jurisdiction over this Case [ECF No. 17], Defendant Giefer cites to an ancillary Kansas state court proceeding, which purportedly involves similar parties and allegations.[1] Notably, the Kansas district court, when comparing its case to this case, noted as follows:

> Upon review of the Complaint, the Court finds that many issues alleged are identical to issues of fact and law raised before the Court in the instant case, including but not limited to the allegations regarding ownership and control of the Plaintiff entity, forgery of documents showing percentages of ownership in the Plaintiff entity, use of a notary public employed by one of the Defendants to notarize the forged signature of Marty Crews, and use of the forged documents to obtain a loan to purchase the vessel named in the federal lawsuit that was formerly known as the 'Charis' in this case. Ownership and control of both the Plaintiff entity and the boat are central issues of fact and law in both cases. . .The First Amended Petition for Stealing, Conversion, Breach of Fiduciary Duty, Unjust Enrichment, Damages, an Accounting, and Injunctive Relief seeks legal and equitable relief from the same parties as the Florida lawsuit based nearly entirely upon the same allegations concerning the ownership-and-control documents of the Plaintiff entity and the ownership and control of the boat *Charis* based upon the same conduct.

[ECF No. 15-2, at 1-2]. A review of the Kansas state court docket shows that the ancillary proceeding was filed on July 10, 2017 [ECF No. 15-3, at 6]. An amended petition was filed in the same action on February 9, 2018. *Id.* at 3.

The amended petition, titled, "First Amended Petition for Stealing, Conversion, Breach of Fiduciary Duty, Unjust Enrichment, Damages, An Accounting, and Injunctive Relief," names "Platinum Contracting, LLC" and "Marty Crews" as plaintiffs while listing "Paul Ben Giefer," "MB Mane Contractors, LLC," and "Salty Crews Sport Fishing, LLC," as defendants [ECF No. 17-2, at 1]. In their amended petition, the plaintiffs there allege that in July 2016, defendant

---

[1] Defendant Giefer also filed a Notice of Filing and Request for Judicial Notice of Public Records in Similar Case [ECF No. 15], which includes a Temporary Restraining Order and Scheduling Order issued by the Johnson County, Kansas District Court [ECF No. 15-1], Journal Entry and Orders [ECF No. 15-2], and the Kansas state court docket [ECF No. 15-3].

Giefer "without authority of Crews, created a document which purported to be the Operating Agreement of Platinum, back-dated it as of July 26, 2013, and forged Crews' name on that document, as if Crews signed it in 2003." *Id.* ¶ 18. Further, plaintiffs allege that defendant Giefer made false misrepresentations to Iberia Bank when seeking a loan for the purchase of the vessel (*id.* ¶¶ 30-32) and at one point "changed the name of the purchaser of the boat from Platinum to a company he owned, defendant Salty Crews" (*id.* ¶ 33). The amended petition brings causes of action against defendants Giefer, MB Mane Contractors, LLC, and Salty Crews for stealing (Counts I, II, & III), against defendants Giefer and Salty Crews for conversion (Count IV), against defendants Giefer and Salty Crews for "imposition of constructive trust due to unjust enrichment" (Count V), against defendant Giefer for breach of fiduciary duty (Count VI), and requests an accounting (Count VII) and injunctive relief (Count VIII). *See id. generally.* The Kansas state court docket references discovery motions, deposition designations, and notably lists November 16, 2018 as the "discovery cut off date" [ECF No. 15-3]. Accordingly, when addressing Defendants' motions, this Court will take judicial notice of the ancillary state court proceedings that are ongoing and pending in Johnson County, Kansas.

## II. Legal Standards

### A. 12(b)(1)

"The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage of the litigation." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Objections to a court's jurisdiction via Rule 12(b)(1) can "come in two forms, 'facial' and 'factual' attacks." *Morrison v. Amway Corp.*, 323 F.3d 920, fn. 5 (11th Cir. 2003). "Facial attacks challenge subject matter

jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id.* When dealing with "[f]actual attacks," these attacks "challenge subject matter jurisdiction in fact, irrespective of the pleading." *Id.* When determining a factual deficiency in the court's jurisdiction, "the district court may consider extrinsic evidence such as testimony and affidavits." *Id.*

### B. 12(b)(6)

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When a complaint fails "to state a claim upon which relief can be granted," it should be dismissed. Fed. R. Civ. P. 12(b)(6). A plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a plaintiff must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

## C. The *Colorado River* Doctrine

When determining whether a federal court should abstain from "concurrent federal proceedings," the Supreme Court in *Colorado River* considered the following factors: (i) "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts"; (ii) "inconvenience of the federal forum"; (iii) "the desirability of avoiding piecemeal litigation"; (iv) "the order in which jurisdiction was obtained by the concurrent forums"; and (v) the adequacy of the state forum to resolve the federal claim. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818-20 (1976). Further, the Supreme Court stated that "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* "In interpreting *Colorado River* and its progeny," the Eleventh Circuit has considered the foregoing factors and added an additional factor, "whether state or federal law will be applied." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004).

## III.     Discussion

### A. Defendant, Paul Ben Giefer's Motion to Dismiss Plaintiff, Platinum Contracting, LLC's Complaint [ECF No. 16].

#### i.     12(b)(1)

In his Motion to Dismiss, Defendant Giefer first argues that dismissal of the action for lack of subject matter jurisdiction is appropriate as Plaintiff has failed to sufficiently allege a basis for this Court to exercise its admiralty jurisdiction [ECF No. 16, at 3-5]. In its response in opposition, Plaintiff argues that it has sufficiently "invoke[d] this Court's *in rem* jurisdiction" [ECF No. 22, at 2]. Upon further consideration, this Court disagrees and finds that Plaintiff has

failed to sufficiently allege that it is entitled to a maritime lien, which would provide a jurisdictional basis for Plaintiff's cause of action.

Before a Court can exercise its *in rem* admiralty jurisdiction, there must be a valid maritime lien, which can attach in contract or in tort. *The Belfast*, 74 U.S. 624, 642 (1868) ("Wherever a maritime lien arises the injured party may pursue his remedy, whether for a breach of a maritime contract or for a marine tort, by a suit *in rem*, or by a suit *in personam*, at his election."). "An *in rem* admiralty proceeding requires as its basis a maritime lien." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010). Courts have defined "[a] maritime lien" as "'a special property right in a ship given to a creditor by law as security for a debt or claim,'" which "attaches 'the moment the debt arises.'" *Id.* For example, "[t]he Federal Maritime Lien Act, 46 U.S.C. ¶¶ 31341-31343, grants maritime liens to particular persons based on their relationship to, or service of, a vessel," such as "'a person providing necessaries to a vessel.'" *Id.* Accordingly, the holder of a maritime lien has "a property right in a vessel, and the proceeding in rem is . . .a means of enforcing the property right." *Id.*

Courts may also have admiralty jurisdiction over torts depending "on the location of the incident" and whether there is "a nexus to maritime activity." *Minott v. M/Y BRUNELLO*, 891 F.3d 1277, 1282 (11th Cir. 2018). "A district court has jurisdiction if the tort 'occurred on navigable waters or. . .[occurred] on land [but] was caused by a vessel on navigable water,' and if the tort 'ha[d] sufficient connection with maritime activity.'" *Id.* Assuming such requirements are met, "a maritime tort gives the victim a lien against the vessel 'by operation of the general maritime lien.'" *Id.* at 1284.

Here, in its Verified Complaint, Plaintiff alleges that this Court "has jurisdiction pursuant

to 28 U.S.C. § 1333" [ECF No. 1, at 1].[2] However, nowhere in its Verified Complaint does Plaintiff purport to allege a maritime lien, in contract or in tort. *See id. generally.* Rather, in its response in opposition, Plaintiff cites *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01* for the proposition that this Court has subject matter jurisdiction over the dispute in question. 625 F.2d 44 (5th Cir. 1980).[3]

In *Jones*, the plaintiffs agreed to purchase a yacht from a retail dealer. *Id.* at 46. After plaintiffs executed a revised sales agreement, made alterations to the vessel's interior, and installed "several thousand dollars worth of electronic gear through another company," the plaintiffs learned that the retailer dealer was no longer in business and that a third party "had entered into a financing arrangement and security agreement" with the retail dealer. *Id.* As a result, the third party "took physical possession of the yacht" before the plaintiffs could. *Id.* The plaintiffs subsequently filed suit against the defendant vessel and third party pursuant to 28 U.S.C. § 1333, alleging "petitory, possessory, and tortious claims." *Id.* On appeal, when determining whether it has subject matter jurisdiction over the case, the *Jones* court noted how the case was one that "involved an allegation by the plaintiff of ownership, right to immediate possession, an unlawful taking and detention by defendant and damages caused to the vessel by such tortious conduct by defendants." *Id.* at 47. Hence, the *Jones* court found that "the District Court properly had jurisdiction over the petitory action," reasoning that the "possessory and

---

[2] Section 1333 provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction. . .(2) [a]ny prize brought into the United States and all proceedings for the condemnation of property taken as prize." 28 U.S.C. § 1333.

[3] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions from the former Fifth Circuit that were decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

tortious conduct allegations involved" in the case were "derivative of the right of title." *Id.*

This Court finds that *Jones* is distinguishable. Specifically, unlike the plaintiffs in *Jones*, Plaintiff did not: (1) enter in a sales agreement, (2) at any point purchase the vessel, or (3) seek possession of the vessel based on its title. More importantly, this Court also finds that *Jones* is distinguishable as Plaintiff instituted a separate action in Kansas state court in July 2017 [ECF No. 15-3, at 6], involving almost identical parties and issues, as noted by the Kansas court. In its amended petition, plaintiffs there even request "the imposition of a constructive trust in its favor on the boat and all equipment and accessories attached to it or housed within it, for its attorney's fees and costs, and for whatever further relief the Court deems proper" [ECF No. 17-2, at 18]. The Court finds that *Richard Bertram & Co. v. Yacht Wanda* is on point and binding on the facts of this. 447 F.2d 966 (5th Cir. 1971). There, the Fifth Circuit held that "[t]he mere fact that a ship is involved will not bring the cause of action within the jurisdiction of the admiralty court." *Id.* at 967. Hence, like in *Yacht Wanda*, "whether this suit is viewed as one to enforce a security interest or mortgage on a vessel" or "a suit to try or quiet title," such an action "is not within the admiralty jurisdiction of this Court." *Id.* at 967-68. Thus, as Plaintiff has failed to adequately allege a maritime lien giving rise to this Court's admiralty jurisdiction, Defendant Giefer's Motion to Dismiss Plaintiff's Complaint under Fed. Rule Civ. Proc. 12(b)(1) is GRANTED.[4]

    **ii.**    **12(b)(6)**

Next, Defendant Giefer argues that Plaintiff has failed to state a cause of action upon

---

[4] In its response in opposition, Plaintiff argues "[i]n this admiralty action, this Court would exercise supplemental jurisdiction over Plaintiff's tort claims since they arise of the same nexus of operative facts" [ECF No. 22, at 3]. As this Court finds that Plaintiff has failed to allege a basis for this Court's exercise of its admiralty jurisdiction, this Court will decline to exercise any supplemental jurisdiction over Plaintiff's alleged remaining causes of action.

which relief can be granted, specifically, that Plaintiff has failed to plead "any legal theories with which it could recover the requested damages" [ECF No. 16, at 7]. In support of its arguments, Defendant Giefer cites *Reynolds v. Brennan*, a discrimination case out of the Southern District of Alabama, where the court, in its report and recommendation, recommended that defendant's motion to dismiss be granted as plaintiff's *pro se* amended complaint failed to "state a claim to relief that is plausible on its face." No. 14-00235-CG-N, 2016 WL 749410, *5 (S.D. Ala. Feb. 1, 2016). Defendant Giefer also cites a product liability action, *Russell v. Makita U.S.A., Inc.*, out of the Northern District of Georgia, where the court dismissed the plaintiff's failure to warn claim when granting the defendant's *motion for summary judgment.* No. Civ.A. 198CV2163RWS, 2000 WL 174908 (N.D. Ga. Jan. 11, 2000). The Court finds neither case to be particularly persuasive in reaching a determination as to whether Plaintiff has adequately pled causes of action against Defendant F/V Chasing Tail, *in rem*, and Defendants Giefer and Salty Crews Sport Fishing, LLC, *in personam*.

Here, as previously stated, Plaintiff has failed to sufficiently allege a maritime lien in order to invoke this Court's *in rem* admiralty jurisdiction over the Defendant F/Y Chasing Tail. Accordingly, this Court finds that Plaintiff has failed to state a claim upon which relief can be granted as to Defendant F/V Chasing Tail, *in rem*. Moreover, upon a review of Plaintiff's *in personam* claims against Defendants Giefer and Salty Crews Sport Fishing, LLC, this Court finds that such claims have not been properly pled. While the argument was not raised by Defendant Giefer in his Motion to Dismiss, the Court finds that Plaintiff's Verified Complaint is a shotgun pleading.[5] A review of the Verified Complaint shows that it is the "third type of

---

[5] In *Weiland,* the Eleventh Circuit found that there are four types of shotgun pleadings: (1) "[t]he

shotgun pleading," as "one that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323-23 (11th Cir. 2015). Plaintiff's Verified Complaint is titled "Verified Complaint *In Rem and In Personam*" with a single sub-heading that reads: "Purchase of the F/V Chasing Tail" [ECF No. 1, at 1-2]. Notably, in its response in opposition, Plaintiff argues that "[i]n this admiralty action, this Court would exercise supplemental jurisdiction over Plaintiff's tort claims since they arise of the same nexus of operative facts" [ECF No. 22, at 3]. Yet, as stated, besides the fact that Plaintiff has failed to state a valid basis for this Court's *in rem* admiralty jurisdiction or how it is the holder of a valid maritime lien, Plaintiff has also failed to adequately plead the tort claims against the *in personam* Defendants in this matter. Hence, Defendant Giefer's Motion to Dismiss Plaintiff's Complaint under Fed. Rule Civ. Proc. 12(b)(6) is GRANTED.

**B. Defendant Paul Ben Giefer's Motion for Court to Abstain from Exercising Jurisdiction Over this Case [ECF No. 17]**

In his Motion for Court to Abstain from Exercising Jurisdiction Over this Case [ECF No. 17], Defendant Giefer argues that this Court's abstention is appropriate in this case in light of the ancillary proceeding in Kansas state court. Defendant Giefer specifically cites the *Colorado River* Doctrine. *Colorado River*, 424 U.S. at 818-20. Notwithstanding the fact this Court has

---

most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" (3) "[t]he third type of shotgun pleading is one that commits the sin of not separating into a different count each of action or claim for relief"; and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323-23 (11th Cir. 2015).

found that it does not have subject matter jurisdiction in this action, this Court will still proceed to evaluate whether the factors considered under the *Colorado River* Doctrine weigh in favor of this Court abstaining from exercising its jurisdiction in this case.

### i. The Court First Assuming Jurisdiction over Property

With respect to the first factor of the *Colorado River* Doctrine, as previously stated, Plaintiff has failed to allege that there is a maritime lien that would give rise to the Court's admiralty jurisdiction in this case. *Crimson Yachts*, 603 F.3d at 868. While the vessel is located within this Court's jurisdiction, this Court has found that Plaintiff has failed to allege a sufficient basis for this Court to exercise its *in rem* admiralty jurisdiction over the Defendant vessel in question. Accordingly, this factor weighs in favor of the Court's abstention.

### ii. Inconvenience of the Federal Forum

Second, when considering the "inconvenience of the federal forum," "[t]his factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal and Const. Co.,* 368 F.3d at 1332. Here, the only party that appears to be located in the federal forum is the Defendant F/Y Chasing Tail. In its Verified Complaint, Plaintiff alleges that Defendant Salty Crews is a Florida limited liability company [ECF No. 1 ¶ 27]. However, when reviewing the amended petition in the Kansas action, the Court notes that: Plaintiff "is a limited liability company, organized and existing under the Revised Kansas Limited Liability Act, having its principal place of business in Lenexa, Kansas" [ECF No. 17-2, ¶ 1], one of the alleged owners of Plaintiff, Crews, lives in Mound City, Kansas (*id.* ¶ 3), Defendant Giefer lives in Leawood, Kansas (*id.* ¶ 4), and Defendant Salty Crews has "an office at 11362 Strang Line Road, Olathe, Kansas" (*id.* ¶ 7).

Moreover, in his Motion, Defendant Giefer argues that "all the parties (save for the vessel) and central witnesses are located in Kansas, as are the original copies of the operating agreements at issue" [ECF No. 17, at 6]. Plaintiff does not respond to this contention in its response in opposition [ECF No. 22]. Perhaps even more telling is the fact that Plaintiff, along with Crews, filed their first action in July 2017 in Kansas state court. Accordingly, for the foregoing reasons, this Court finds that the inconvenience of the federal forum weighs in favor of the Court's abstention in this case.

### iii. The Desirability to Avoid Piecemeal Litigation

Here, Defendant Giefer cites *Sini v. Citibank, N.A.* for the proposition that abstention is appropriate to avoid piecemeal litigation "when 'identical litigation' is filed in the state and federal courts." 990 F.Supp.2d 1370, 1378 (S.D. Fla. 2014) ("[C]ourts of this Circuit have found that abstention is warranted when 'identical litigation' is filed in the state and federal courts, requiring duplication of resources and potentially conflicting decisions based on the same evidence.") (citing *Signal Technology, Inc. v. PennSummit Tubular, LLC*, No. 09-60636-CIV, 2010 WL 454800, at *5-6 (S.D. Fla. Feb. 9, 2010), *Bosdorf v. Beach*, 79 F.Supp.2d 1337, 1343-44 (S.D. Fla. 1999), *Allied Mach. Serv., Inc. v. Caterpillar, Inc.,* 841 F.Supp. 406, 408 (S.D. Fla. 1993)). This Court agrees.

Once more, Plaintiff fails to respond to Defendant Giefer's argument in its response in opposition [ECF No. 22]. Moreover, a review of the Verified Complaint in this matter and the amended petition in the Kansas state proceeding show that the litigation is virtually "identical." *Siri*, 990 F. Supp. 2d at 1378. Further, this Court notes that the Kansas court previously reached the same conclusion, finding that "many issues alleged are identical to issues of fact and law

raised before the Court in the instant case" [ECF No. 15-2, at 1]. Accordingly, this Court finds that this factor weighs in favor of abstention in light of the "identical" litigation pending in the state forum.

### iv. The Order in which Jurisdiction was obtained by the Concurrent Forums

In its response in opposition, Plaintiff does not dispute Defendant Giefer's argument that the Kansas action: (a) was in fact the first to "perfect jurisdiction over all named defendants"; (b) has "been pending in that jurisdiction for over a year now"; (c) is "deep into discovery," with depositions having been taken and "thousands of pages of documents hav[ing] been exchanged in discovery" [ECF No. 17, at 6]. A review of the Kansas state court docket makes clear that Plaintiff, along with Crews, filed their petition on July 10, 2017 [ECF No. 15-3]. Moreover, on February 9, 2018, Plaintiff and Crews filed their amended petition. *Id.* Further, the Court notes that, according to the Kansas state court's docket, the discovery cut off date appears to have been November 16, 2018. *Id.* Hence, this Court finds that the Kansas state court clearly obtained jurisdiction first over the parties, as well as the factual and legal issues presented by both cases. Accordingly, this Court finds that this factor weighs in favor of abstention.

### v. The Adequacy of the State Forum to Resolve the Claims

Here, the Court finds that the Kansas state forum is more adequate to resolve the claims raised in the cases. For the reasons stated herein, this Court has found that Plaintiff has failed to allege a basis for this Court's jurisdiction, namely, that it has admiralty jurisdiction over the Defendant vessel, F/Y Chasing Tail. Furthermore, as drafted, Plaintiff has failed to allege any independent causes of action against Defendants Giefer and Salty Crews or any independent basis for this Court to exercise its jurisdiction over said Defendants. Accordingly, in light that

Plaintiff has failed to sufficiently allege a basis for jurisdiction as to all named Defendants in this action, this Court finds that the adequacy of the Kansas forum favors abstention in this matter.

> **vi.** **Choice of Law**

Lastly, Defendant Giefer argues that the issues presented by the cases are "matters purely controlled by state law and do not involve issues of federal law" [ECF No. 17, at 8]. As Plaintiff has failed to allege a basis for invoking this Court's *in rem* admiralty jurisdiction and has wholly failed to respond to this contention, this Court finds that this factor weighs in favor of abstention.

Thus, for the foregoing reasons, and after further consideration of the record in this action, the motions, and responses thereto, it is

**ORDERED AND ADJUDGED** that

1. Defendant, Paul Ben Giefer's Motion to Dismiss Plaintiff, Platinum Contracting, LLC's Complaint [ECF No. 16] is **GRANTED.**

2. Defendant, Paul Ben Giefer's Motion for Court to Abstain from Exercising Jurisdiction over this Case [ECF No. 17] is **GRANTED.**

3. For the reasons stated herein, Defendants' Emergency Motion to Quash Arrest Warrant [ECF No. 32] is **GRANTED.**

4. The Court's Order Directing Arrest of Vessel and Appointing Substitute Custodian [ECF No. 29] is hereby **VACATED,** as of the date of this Order.

5. The Warrant Issued on November 13, 2018 [ECF No. 30] is hereby **QUASHED**, as of the date of this Order.

6. Defendants' Motion for Temporary Restraining Order [ECF No. 33] is **DENIED as MOOT.**

7. Plaintiff's Verified Complaint [ECF No. 1] is **DISMISSED.**

8. This case is **CLOSED** and all pending motions are **DENIED as MOOT.**

**DONE** and **ORDERED** in Chambers at Miami, Florida this 20th day of November, 2018.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided:
Magistrate Judge Otazo-Reyes
All counsel of record